cases number 25414 and 25416. Good morning, Your Honors, and may it please the Court, my name is Daniel Noble of KKLLLP, and I represent the defendant appellant Mark Grayson. I did not represent Mr. Grayson below. I'd like to reserve two minutes for rebuttal. In this extremely weak alleged gun toss case, this Court should reverse the conviction for insufficiency of the evidence or, at a minimum, vacate and remand for a new trial based on multiple evidentiary errors that the District Court committed. And, Your Honors, that's where I'd like to start this morning is with the evidentiary errors. Beginning first with Officer Breitman's testimony about why she was not able to recover fingerprints from the firearm in question and why generally, more importantly, it's difficult to obtain fingerprints from firearms. That testimony was the subject of expert testimony that should have been subject to the reliability and other requirements of Rule 702. And instead, over the defense's objection, the District Court erroneously admitted it as lay opinion testimony under 701. Is that kind of common sense? I mean, you know, my iPhone's going to have more fingerprints than, you know, something that has ridges all over it. And it was a question about that sort of intuition, wasn't it? I would disagree, Your Honor. I believe your statement, and it's the argument that the government puts forth in its brief about lay opinion or lay knowledge of the fact that a glossy surface like your iPhone case or your iPhone cover or a mirror would, fingerprints would appear on such a surface. I think that is properly the subject of lay testimony. But that's not what the question was that was posed to Officer Breitman. The question was, is in your experience, first of all, how common is it to recover fingerprints from the surfaces of firearms? The question about recoverability is key because that is expert testimony. The recoverability of fingerprints —  Why isn't that anything that just about any NYPD detective would know? It's not something that anybody would know. It's actually very — That's why any New York police detective would know. Yes, Judge Parker. It's not something that is within the kin of any officer's testimony. The forensic ability — Almost. They take new fingerprints all the time. Well, there was no testimony here about this particular officer's experience obtaining fingerprints. She testified she's taken tons of DNA swabs, but there was no testimony elicited to lay any foundation for her experience. And even if it had, that is what 702 is based upon. It's — this Court has said whenever the testimony is based on specialized knowledge or experience, then that is what is subject to Rule 702. And that's Judge Radji's opinion in the Garcia case. I would point her — the Court to. But there are other cases that this Court has held where law enforcement witnesses testify based in part on their experience and opine on the likelihood of something or the commonality of something occurring, that that is expert testimony. And I'd point the courts and — Given the other evidence against her client, what's your theory as to how, if this hadn't come in, the result would have changed? So, Your Honor, that's — the question is whether or not it was harmless or not. And so this was a preserved error. The question was, the standard of review is abuse of discretion. We submit it was abuse of discretion. If the Court were to accept that, then the question is, what are the harmless — was this harmless or not? And there we would point this Court to, again, Judge Radji's opinion in Garcia, which distills out the four factors for harmlessness in this context that the Court must consider. Of those four factors, we would argue that a minimum three of them favor heavily the defense. The first factor is what is the strength of the government's case. And we would submit that the government's case here was extremely weak. Obviously, we've raised an insufficiency of the evidence argument. We argue that, as a matter of law, it was — the jury could not rashly conclude beyond a reasonable doubt on this record that Mr. Grayson possessed the firearm. But setting that aside, the evidence I think the government would even have to concede is one of the weakest toss cases that I've seen. There was no eyewitness testimony. The body camera footage does not show Mr. Grayson's possession. But how wrong is it that it goes to an explanation for why fingerprints were not there? You still have the DNA evidence. But in those two issues — I'm glad you raised that — are intertwined, right? So the DNA evidence itself was extremely weak. The amount that was found on there was extremely weak. The DNA expert was not able to testify that it's an exact match. It was, you know, using the CR — SDR mix technology. And she could not rule out the possibility, which was the defense, that there could have been secondary transfer, right? And that's where the fingerprint evidence comes in. Because the absence of fingerprints is completely consistent with the defense's theory that this was secondary transfer. It would have bolstered the defense case to be able to argue to the jury that the government could not explain why there were no fingerprints. Instead, what did the government have? It had the inadmissible, improperly admitted testimony of a pseudo-expert. The DNA evidence suggested that that possibility of that theory being correct was one in millions. It was actually billions, Your Honor, so 26 billion. And I can see that. But these numbers for the SDR mix technology are astronomical, right? So I would point the Court to — there are other decisions which the government cites in this case of cases where this Court has reviewed SDR mix technology. And then we get into, like, the tens of billions, hundreds of billions range of probability. In those cases, though, there was also other corroboration of possession. And here we would submit there's no evidence of corroboration. The government's case, they admitted DNA evidence here was critical, which is why the fingerprint evidence, the fingerprint testimony, the improperly admitted expert testimony was so important here and so prejudicial. Let me go back to Parker's question about harmlessness. Because he might be right. You know, I've actually put on a number of witnesses, expert witnesses on fingerprinting. And different services have got different difficulties attached to the exercise. Exactly, Your Honor. But let me just go through the facts generally as I understand it. He runs. He's running. And there are at least two officers who see him throw an object. And they go to that particular part of the area where they saw him throw the object. And with their searchlights, their flashlights, they find a gun. And the object that they see, I think, if you can correct me if I'm wrong, appears to them at first sight to be a gun. And that's what they find. And then set aside the fingerprint issue, which I appreciate, but then, you know, there's this DNA evidence that makes it highly unlikely, well, makes it very likely that he touched that gun. Right? I would contest you there because there's the secondary transfer theory, which was not ruled out by the expert, and the government did not definitively prove it. Oh, I understand that. Yeah. But I don't know that the secondary transfer theory helps you. Well, it all goes to the strength of the government's case, right, which is a factor, a very, very important factor that this Court must consider on Garcia in getting to Judge Parker's question about harmlessness, right? And just to go to your question, Your Honor, if I could tick through the issues. The running, it's equivocal, right? So my client had crack cocaine on him. He had prior felony convictions. He'd ran multiple red lights. There's an equivocal, there's an equally plausible explanation for the running other than the fact that, like, they claimed he had the gun, right? So the running doesn't help the government. What is it that this does not help? The officer's testimony was completely incredible. I mean, Your Honor, respectfully, you said they testified that he threw the gun. That's true at trial, but if you watch the body camera footage, one of the officers repeatedly, the one who saw him, like, allegedly, he said drop something. He repeatedly says drop something. And what happens, if you look at the record carefully, when the officer, when they find the gun, his sergeant asks him, so you saw him throw the gun. And that, at that moment, he starts using the verb throw. And from then on, he uses throw. He doesn't use drop. He testifies to throw at trial. The second officer that you alluded to, Your Honor, she testified on the body camera footage, she says it couldn't fit, something couldn't fit under the fence, couldn't fit under the gate. She says that contemporaneously. But that didn't convince you. It might not have convinced us. But the jury accepted all of that beyond a reasonable standard. Well, Your Honor, I think that goes to the sufficiency argument where we understand that the burden is high. But here on this argument about the improper admission of testimony, harmlessness, the Court has to assess the strength of the government's case. And what we're arguing here is it was extremely weak and, therefore, very prejudicial to admit improperly the expert testimony, right? And then just if I could hit the other factors quickly. I see my time is up. But the other question is the importance of the evidence, which I think I've hit. It's extremely important to the defense case. Was it cumulative? No. There was no other testimony about why there were no fingerprints. It wasn't like there was another expert who was properly qualified who testified to that fact, and then you just have this one officer say something. That comes up in some cases. That's not this case. And then the last is the use by the prosecutor. And, yes, we concede, as the government points out, they didn't really highlight this in their summation or the rebuttal. But why not? They didn't have to because they could repeatedly harp on the critical DNA evidence without having to answer the question about why there were no fingerprints, which was extremely important to the defense's theory. And it completely undermined the defense's case. So with that, Your Honor, I'll save my time for rebuttals. Can you reserve some time for rebuttals? Yes. Thank you. Thank you very much. Good morning. Good morning. May it please the Court, my name is Varun Gamaste. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on appeal, as well as in the district court below. This Court should affirm the appellant's conviction on both his latest criminal case and the associated violation of supervised release. On appeal, Grayson makes a sufficiency of the evidence challenge that his conviction was not supported by adequate evidence, and he raises concerns with several evidentiary rulings. All of these are meritless. First, with respect to the sufficiency of the evidence, the jury was presented with ample evidence on which to rely to conclude that Grayson possessed a gun on the evening of August 6, 2023. This, Grayson on appeal, asked this Court to do what it cannot, which is second-guess that jury's assessment of witness credibility and the inferences drawn from the evidence. Second, the district court appropriately exercised this. Let me back up. What's the evidence that he possessed a gun? Of course, Judge Parker. So there's an abundance of evidence in this case. I can walk through it in some detail. Mr. Grayson was driving a car on the night in question. He ran a red light. He was attempted to be stopped by two police officers who were in a vehicle. One of those officers testified at trial as to the nature of the stop. In fact, Mr. Grayson took off, did not stop for the police. He then led police. Consistent with having a lot of crack cocaine on him. What are the evidence of the gun? Eventually, Judge Parker, Mr. Grayson crashed that car on a one-way street going the wrong way. He then took off. He committed a lot of traffic violations. What about the gun? Of course, Your Honor. So there's several pieces of evidence that I would point to specifically. The first is that the two officers were pursuing Mr. Grayson on foot. As they were pursuing him, they made several observations that I think are indicative ultimately of Mr. Grayson having a gun. The first is when he passed the gate in question that is relevant in this case, one of the officers, Officer Alcantara, shouted, police, don't move. You can hear that on the body camera footage. At that moment, he saw, he testified that he saw Mr. Grayson make a downward throwing motion and saw an object leave his hand. The other officer who was pursuing, Officer Wright, similarly said that Mr. Grayson made a throwing motion similar to a Frisbee, flinging a Frisbee downward. And she also testified that she heard the sound of metal hitting the pavement. Subsequent to that, Your Honor, Mr. Grayson was ultimately arrested, but the moment after he was arrested, Officer Alcantara said to his colleagues he dropped something, and he went straight to the spot where they found the firearm, the gate, the playground gate. They searched nowhere else, and within two minutes, they located the gun inside the park. That entire. So why rely on the fingerprint evidence? In other words, you have the DNA evidence. I'm a little, having put on, you know, I mean, if you're right, then I wasted a lot of time putting on expert witnesses to show that, to have a fingerprint evidence admitted. I wasted a lot of time. So why, how is that late testimony? Why couldn't I, when I was, you know, in your position, just say, Officer Maven, is there a likelihood that you could lift fingerprints from a firearm? I don't think so. That doesn't make sense to me. So why isn't that error? I'm happy to address that, Judge Loyer. Okay. So if we look at the testimony itself of Officer Brightman, it was that she unsuccessfully tested the firearm for fingerprints, and based on her experience and the condition of the firearm, the condition of the firearm affects whether she can collect fingerprints. If it's smooth and glossy. Based on what experience? As an ECT officer, Your Honor. What's an ECT? Evidence collection team, Your Honor. And so part of her responsibilities that she testified to is showing up on scene repeatedly. She's done this hundreds, if not thousands of times, collecting DNA and potentially fingerprints from firearms. But she is not herself a fingerprint expert. No, she's not. And she doesn't claim to be, Your Honor. So what are the fingerprint experts at the NYPD headquarters do that's different from what she has? You know, I don't specifically know the answer to that question, Judge Loyer. But I, and I don't want to speculate on that question. But I think what I come back to in determining whether or not her testimony itself was lay opinion or expert testimony is the standard that this Court set forth in Regas, which is that the crux of the analysis is that the testimony resulted from a process of reasoning familiar in everyday life. And if you look at what Officer Brightman testified to, it was something that is purely based on common sense. As I think Judge Park noted before, it is if you touch a glossy surface like a TV or a mirror, you're much more likely to get fingerprints than if you touch a rough surface. A piece of paper. Tell me. Just tell me. What's the likelihood of a fingerprint appearing in a way that, a latent fingerprint appearing in a way that's usable and reliable? Again, I don't think that Officer Brightman testified to what would happen with a piece of paper,  But I think that is distinct from a glossy surface like a TV screen or a mirror. I think the crux. Well, what I might suggest is, I don't know that I would rely on the fingerprint evidence. So, on the harmlessness argument, your argument is that it's overwhelming based on the video, which frankly, well, what is your argument with respect to that? It's based on the cumulative evidence that was presented to the jury, Your Honor. I mean, I can't, you know, I looked at this video and it gave me a headache because it's shaking. I understand. So I don't draw anything from that, but you're relying on the testimony? It's several things, Your Honor. It is the DNA evidence, obviously. There are aspects of the body camera that I think are incredibly important. Namely, the audio of Officer Alcantara shouting, police don't move. Additionally, obviously the recovery of the firearm itself is all on body camera footage, Your Honor. That entire sequence is on body camera footage. And then also it's contemporary. But the throwing, I mean, the camera is shaking. So I can't really see anything. That's true, Your Honor. But there is no requirement that there be video evidence of Mr. Grayson throwing a firearm. So you rely on the testimony of that? The testimony of contemporaneous testimony of two different officers about what occurred exactly when Mr. Grayson passed that playground gate, which was consistent across both of those officers. That in conjunction with things like the DNA evidence and the body camera footage showing the recovery of the firearm. And just to go back, I forgot to ask one question about the fingerprints. Can you point to a case where there was affirmative admitted testimony about the likelihood of lifting fingerprints from a firearm as lay opinion testimony rather than expert testimony? You mentioned Vegas. That's not a fingerprint case. Can you point to a case? I cannot point to a case about fingerprints specifically, Your Honor. What we've done in our brief, I think, is contrast this scenario, this specific scenario with examples in which this Court has found that an issue is sufficiently complex such that it is expert testimony. A testimony on the issue is expert testimony. And the case I would point this Court to is Haines. In that case, the police officer testified about the workings, the mechanism of a fuel tank. Something that we would submit is not within the knowledge of an everyday individual, Your Honor. In that case, the officer testified, as I said, about the mechanism, how it operates, and how it would be affected by drugs that were placed within the fuel tank. And I think this Court rightly there found that that was, in fact, the reasoning there, was rightly, was based on that officer's specialized experience. That is not what Officer Brightman testified to. She didn't testify to, for example, the presence of oils on someone's fingers and how that would affect whether or not there were fingerprints put on a firearm. She testified to a very simple proposition, Your Honor. And one that the government submits, as we have in our brief, was not something that the government, or frankly the defense, really pointed to throughout the rest of the trial. It wasn't something that the government ever raised again. And the only time that the defense raised it down at the district court level was in the context of contrasting it with DNA evidence to bolster their argument that there wasn't a sufficient amount of DNA that was collected from this firearm because unlike fingerprints they submitted on a gun that was rough in texture, we would expect there to be more DNA than there was. Can I ask just one more question? Is the harmlessness standard the same as sufficient? Like if, when we're looking at the fingerprint issue to determine if it's harmless, if we find that, if we also conclude that it was there sufficient evidence, does that resolve the harmlessness issue because that's what there was in the evidence or is there a separate inquiry that we have to make? I believe that would resolve it if the court were to find there was sufficient evidence. Absent this fingerprint. Yeah. Correct. It's because there was not something that wasn't there. Exactly. I think the harmlessness analysis even goes further, though, and also looks to such factors as Mr. Noble pointed out in the Garcia case, things like the treatment of the evidence by the prosecutor, the cumulative nature of the evidence as well. And we would submit at the very least the treatment of the evidence by the prosecutor in that analysis falls in the favor of the government. Thank you very much. Thank you, Your Honors. I'd like to begin just with the legal standard, Judge Park. I think it's actually a different inquiry. So, again, I'd point the court to Judge Radji's opinion in Garcia on this question. So it's Federal Rules of Evidence 103, and the court has to determine for the harmlessness, to find harmlessness that it didn't have a substantial and injurious effect on the jury's decision. And we would argue it did here because of the weakness of the government's case. And, Judge Parker, you pressed.  But that because of part is just the sufficiency in the first argument. Isn't it the same? Yeah. But there are four factors that go into that inquiry, this Court has said. Again, you know, the strength of the evidence is just one of them. How important was it for the defense? Was it cumulative? And how did the prosecutors use it? So there's four factors that go into it, sufficiency being one or the strength of the case. And so, you know, we would submit, like, listen, they're intertwined inquiries, obviously. So the court has to assess the strength of the case. But we would submit that the harmlessness error legal analysis is separate from the sufficiency challenge. And to get to Judge Parker's question, I didn't hear any evidence from the prosecutor that put the gun in my client's hands, right? There's no eyewitness testimony. The body camera footage doesn't show him possessing a gun. It doesn't even show him throwing anything. The police officer's testimony changed. So he points to Officer Alcantara's testimony. Alcantara testified he dropped something. My client dropped something multiple times. You hear that contemporaneously on the body camera footage. At trial, the story changes. He threw something, to be consistent, right? Officer Wright testified on body camera footage says, it can't go under the gate. It can't go under the gate. Then at trial, she testifies, sure, the gun can go under the gate. The story changes. They're totally incredible. She was impeached multiple times. Not reliable testimony. And in any event, they didn't see him with the gun. The only evidence they have is the weak DNA evidence, the improperly admitted expert testimony that there's no fingerprints. And then you have the gun being found. But that's not evidence that my client possessed it. It was found inside of a park, 12 to 15 feet, underneath a little gap in a fence, 12 to 15 feet in. And the government presented no evidence, no expert testimony or reliable lay opinion testimony, I'd submit, that it's even physically possible. Like, my client is not a Knicks basketball player. He's running up, like, next to the fence, and he tosses something. Officer Wright testified. She heard a clink. She heard something hitting the chain link fence. At trial, again, she changes her testimony. She says it hits metal hitting concrete, right, which is consistent with her theory that somehow my client tossed this gun at full speed across his body. It goes under the fence a few inches of clearance and slides 12 or 15 feet into the park. It's incredible. And so that's why this error is so important. So I'll leave it at that, Your Honor, unless you have any questions. Thank you. Thank you. Okay. Thank you, Judge. Your Honor, may I just clarify one point, which is in response to Judge Park's question, I just wanted to make clear that the – what I was saying about the distinction between the sufficiency of the evidence and the harmlessness error analysis, to be clear, in the sufficiency of the evidence analysis, the court would account for any evidence that may have been improperly admitted, but that's not the case in the harmlessness context. It's two very different analyses. I appreciate that. Thank you, Your Honor. Thank you very much. Thank you both. You will reserve decision.